IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

_____

UNITED STATES OF AMERICA

v.                                                    No. 0090 a:17CR00053-0001

ADAM VICTOR

_____

_____

SENTENCING MEMORANDUM ON BEHALF OF
DEFENDANT ADAM VICTOR

_____

Nelson Mullins Riley & Scarborough LLP
Samuel Rosenthal
sam.rosenthal@nelsonmullins.com
(Bar No. 329516)
101 Constitution Ave., N.W..
Washington, D.C. 200017
Tel  (202) 689-2915
Fax (202) 689

Attorneys for Defendant Adam Victor

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT .........................................................................................1

    A.    Mr. Victor's Background and History ................................................1

    B.    The Offense ......................................................................................3

ARGUMENT .....................................................................................................................4

    I.    There is no Dispute as to the Appropriate Guideline Range .................5

    II.    The Factors Set Forth in the Guidelines Warrant a Downward Variance...............5

        A.    The Individual Characteristics of the Defendant .......................................6

        B.    The relative seriousness of the offense generally......................................8

        C.    The Fallacy of Treating All "Frauds" As Warranting Similar Treatment Under the Fraud Table ...........................................................10

        E.    Need to Consider Collateral Consequences ............................................16

    III.    Both Parties, as Well as The Presentence Report, Correctly Conclude that Conduct Pre-dating the Offense Should Not be Considered  "Relevant Conduct," And Should Be Excluded from Consideration in Determining the Appropriate Guideline Range .......................................................17

CONCLUSION...................................................................................................................19

APPENDIX

    A.  Letters of Support

    B.  FEC Conciliation Documents

    C.  Unreported Decisions Dealing with Sentencing in Campaign Contribution Cases

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Citizens United v. Federal Election Comm'n,*
  558 U.S. 310 (2010).................................................................9

*Davis v. Federal Election Comm'n,*
  554 U.S. 724 (2008)................................................................8

*McCutcheon v. Federal Election Comm'n,*
  134 S. Ct. 1434 (2014)............................................................8

*United States v. Adelson,*
  441 F. Supp. 2d 506 (S.D.N.Y. 2006) ...................................11

*United States v. Anderson,*
  533 F.3d 623 (8th Cir. 2008)..................................................16

*United States v. Autery,*
  555 F.3d 864 (9th Cir. 2009)................................................6, 7

*United States v. Bera,*
  16-097 (E.D. Cal., 2016)........................................................15

*United States v. Braddock,*
  3:12-mj-00171-DFM (D. Conn. 2013) ...................................16

*United States v. Chatwal,*
  1:14-cr-00143-ILG (E.D.N.Y., 2014)....................................14

*United States v. Corse,*
  723 F. 3d 366, 379 (2d Cir. 2013) .........................................11

*United States v. Crop Growers Corporation,*
  No. 1:96-cr-00181-GK............................................................14

*United States v. Cruz-Perez,*
  567 F.3d 1142 (9th Cir. 2009).................................................5

*United States v. D'Souza*.........................................................15

*United States v. Diaz*,
    2013 WL 322243 (E.D.N.Y. Jan. 28, 2013) ....................................................11

*United States v. Dowd*,
    451 F.3d 1244 (11th Cir. 2006)....................................................................19

*United States v. Dugger*,
    485 F.3d 236 (4th Cir., 2007)......................................................................18

*United States v. Forrest*,
    611 F.3d 908 (8th Cir. 2010)........................................................................18

*United States v. Gupta*,
    904 F. Supp. 2d 349 (S.D.N.Y. 2012) .........................................................10

*United States v. Harber*,
    1:14-cr-00373-LO (E.D.VA. 2015)..............................................................15

*United States v. Hart*,
    No. 94-1005, 1995 U.S. App. LEXIS 20203 (10th Cir., July 28,
    1995) .............................................................................................................18

*United States v. Howe*,
    543 F.3d 128 (3d Cir. 2008)...........................................................................7

*United States v. Johnson*,
    347 F.3d 635 (7th Cir. 2003)........................................................................18

*United States v. Lake*,
    No 1:99-mj-00674-JMF (D.D.C. 1998).........................................................14

*United States v. Lovasco*,
    431 U.S. 783 (1977)......................................................................................18

*United States v. Martin*,
    526 F.3d 926 (6th Cir. 2008)........................................................................19

*United States v. Marybeth Feiss*
    (S.D. Fla., 2012) ..........................................................................................15

*United States v. Munoz*,
    430 F.3d 1357 (9th Cir. 2005)......................................................................12

*United States v. Ovid*,
   No. 09-cr-216(JG), 2010 WL 3940724 (E.D.N.Y. Oct. 1, 2010)......................11

*United States v. Rangel*,
   697 F.3d 795 (9th Cir. 2012).............................................................5

*United States v. Robinson*,
   516 F.3d 716 (8th Cir. 2008).............................................................7

*United States v. Rosa*,
   507 F.3d 142 (2d Cir. 2007)............................................................19

*United States v. Ruelas-Mendez*,
   556 F.3d 655 (8th Cir. 2009)...........................................................12

*United States v. Spears*,
   No. 03-cr-00096 (D.D.C. 2003) ......................................................14

*United States v. Stip*e,
   No. 03-cr-00128 (D.D.C. 2003) ......................................................14

*United States v. Sykes*,
   7 F.3d 1331 (7th Cir. 1993).............................................................18

*United States v. Thompson*.
   1:14-cr-00049-CKK (D.D.C., 2014) ..............................................15

*United States v. Thompson*,
   251 U.S. 407-411 (1920)................................................................18

*United States v. Troha*,
   No. No. 07-CR-050.........................................................................14

*United States v. Whitehead*,
   532 F.3d 991 (9th Cir. 2008)............................................................8

*United States* v. *Whittemore*,
   3:12-CR-0058-LRH-WGC (D.Nev., 2013) ....................................15

**Statutes**
18 U.S.C. § 2 .........................................................................................3

18 U.S.C. § 3553(a) .........................................................................5, 6

52 U.S.C. § 30109(d)(1)(D)(i) ................................................................3

52 U.S.C. § 30122 ................................................................................3

USSG 2B1.1 ........................................................................................12

USSG 2B1.1, Comment n. 3(B) ............................................................12

USSG 2C1.8(b)(3)(B) ............................................................................9

USSG 2C1.8(b)(4) ..................................................................................9

USSG § 1B1.3(a)(1) .............................................................................17

USSG § 1B1.3(a)(2) .............................................................................17

USSG § 2B1.1 .......................................................................................10

USSG § 2B1.1(b)(1)(C) ..........................................................................5

USSG § 2C1.8(b)(1) ...............................................................................5

USSG § 2C18(a) .....................................................................................5

USSG, § 3D1.2(d) ...........................................................................17, 18

**Other Authorities**

First Amendment ....................................................................................8

*American Bar Association, A Report on Behalf of the American Bar
    Association Criminal Justice Section Task Force on the Reform of
    Federal Sentencing for Economic Crimes,Second Draft* (May 15,
    2014) ...............................................................................................12

Digital Millennium Copyright Act .........................................................8

Federal Election Campaign Act ............................................................14

Foreign Corrupt Practices Act ..............................................................14

Frank Bowman, *Sacrificial Felon: Life Sentences For Marquee
    White-Collar Criminals Don't Make Sense, American Lawyer* ......11

Hon. Jed S. Rakoff, *Why the Federal Sentencing Guidelines Should
    Be Scrapped, 26 Fed. Sent'g Reptr. 1 (2013)* ...............................12

Kate Stith & Jose A. Cabranes, *Fear of Judging: Sentencing Guidelines in the Federal Courts* (University of Chicago Press 1998) ....................................................................................................11

USSG Office of General Counsel, "Departure and Variance Primer," May, 2014, at 102 ...............................................................................5

Mr. Victor submits this sentencing memorandum in connection with his sentencing currently scheduled for March 6, 2018.   As explained below, Mr. Victor respectfully submits that a sentence of probation would be appropriate and in keeping with the spirit and letter of the *Sentencing* Guidelines, and that in the alternative, the Court should sentence Mr. Victor to home confinement for a term at the lower end of the Guideline range (which is between 6 and 12 months).  As explained more fully below, Mr. Victor's laudable personal and professional background militates toward leniency, especially as he never sought the type of political *quid pro quo* that the campaign law he violated is designed to deter.

## PRELIMINARY STATEMENT

### A.   Mr. Victor's Background and History

Mr. Victor is a 65 year old businessman who has lived an exemplary and law-abiding life, with the exception of this matter.   He is a husband of 32 years, and has four children.  Mr. Victor is an engineer who earned degrees from Cornell University and the Wharton School of Business.  Throughout his career, Mr. Victor has developed highly innovative technologies to assist our country in meeting its energy needs.   At no time, has Mr. Victor or any of his family run for, or sought appointment to, any public office.

In his professional endeavors, Mr. Victor has gone beyond developing successful technology in pursuit of his business interests.   He repeatedly has provided services free of charge, often at great expense, to assist local and foreign communities on a pro bono basis. For example, he responded promptly when approached by James Woolsey to address weaknesses or deficiencies in the New York infrastructure, which might be vulnerable to a terrorist attack.  Mr. Victor immediately prepared a lengthy report, at no charge, for Defense Science advisory Board.

Mr. Victor has tried to help the underprivileged by using very inexpensive and non-polluting technology to replace expensive and polluting fertilizer. Recently, he sent agricultural materials to a poor village in Southern Africa which lacked adequate resources to grow enough food to feed those living in the village. Having learned about special techniques for farming well-suited for conditions in Africa, Mr. Victor donated to the village specially formulated seeds. As a result of these efforts, the entire village will not only benefit from greater produce, but farmers there have learned to use materials that will improve their farming in years to come without relying on expensive and polluting fertilizer.

Closer to home, Mr. Victor has used his engineering background to serve as Board President of his 1500 resident Condominium without pay, guiding his neighbors through some extraordinarily tough times. When Hurricane Sandy devastated lower New York and damaged the Condominium, Mr. Victor declined to join the massive exodus from the City, and was instead the only board member to stay in his building. He spent countless hours helping other residents who similarly had decided to "shelter in place." Mr. Victor stayed in the building for several weeks after Sandy rendered it uninhabitable - with no electricity, no water and no heat -- arranging for 24-hour security and working side by side with professional contractors to restore utilities. He persuaded personnel from a plant in Syracuse to travel 250 miles to lend assistance. Mr. Victor also spearheaded the building's response to an adjoining collapsed street with damaged infrastructure from another disastrous event.

Similarly, when Typhoon Sandy wreaked havoc on the Philippines as the worst storm ever recorded, Mr. Victor, again at no cost, sent engineers to survey the situation and produce a *pro bono* report for the Government of the Philippines. That report, detailing how the country's

2

infrastructure needed to be rebuilt, on an immediate, intermediate and long term basis, was professionally printed and given not only to the Philippines, but the World Bank, the UNDP and several delegations of the United Nations whose island countries could suffer a similar fate from "super-storms."  As soon as devastating hurricanes Maria and Harvey hit Puerto Rico, Mr. Victor mobilized an effort to collect over 50 bags of clothes and supplies from his building's residents to send to the island.

Mr. Victor also was a founder of "China Heart" a not-for profit company formed nearly 30 years ago to bring disadvantaged children from China to Cornell Medical Center for life-saving cardiac surgery.  Mr. Victor has also devoted considerable time to working with other charities.  For example, he was a funder and instructor of the YMCA Olympic Development Judo Camp, serving largely underprivileged children, for 25 years.

### B.      The Offense

Mr. Victor has acknowledged that he violated 52 U.S.C. §§ 30122, 30109(d)(1)(D)(i) and 18 U.S.C. § 2, when he urged others to make campaign contributions without disclosing to the election committees that he was he was the source of the funds.   Both the Government and the Defendant agree that the funds involved in these campaign contributions totaled $17,500, and were made in November and December 2011.  While Mr. Victor urges that he be treated with leniency for this offense, nothing in this Memorandum is intended to diminish or dispute that he violated the law.

With the exception of one $2500 contribution to a senatorial campaign, all of the contributions making up the offense relate to the presidential campaign of Herman Cain.   The entire offense relating to all contributions at issue occurred over three days, when Mr. Victor purchased 4 dinner fundraiser tickets for his family and reimbursed 3 friends who bought their

fundraiser dinner tickets so that they could attend the dinner. As explained in more detail below, the amount contributed to both of these candidates had absolutely no potential to influence either election, and Mr. Victor himself was not seeking an appointment or other *quid pro quo* for either contribution.  Other than through the contributions themselves, Mr. Victor was not connected in any way to either campaign, and neither was any family member or individual seeking any improper personal benefit from the campaign.

The Government and Mr. Victor have also stipulated as to the appropriate disposition under the Guidelines. While the Government and the defendant have stipulated that under the Sentencing Guidelines a potential sentence of 6 to 12 month could be imposed, the Guidelines also provide that this sentence could be served by home confinement, see USSG, Sentencing Table, Zone B, and significantly, the Government has expressly stated in the Plea Agreement that Mr. Victor is not precluded from seeking probation in light of the sentencing factors to be considered by the Court.

## ARGUMENT

As explained more fully below, the Government and the Defendant both agree with the Presentence Report, which calculates the appropriate guideline range as 6-12 months.  They also agree that this places the sentence in Zone B, which would make the Defendant eligible for home detention. The Government has expressly agreed, however, that the Defendant may seek a sentence of probation without violating the plea agreement.  We respectfully submit for the reasons set forth below, that such a disposition would be appropriate based on the particular nature of the offense, the individual characteristics of the Defendant, and the need to avoid disparate treatment of Mr. Victor with sentences imposed in other cases, particularly in this District.

I. **There is no Dispute as to the Appropriate Guideline Range.**

The Government agrees with Mr. Victor that a range of 6 to 12 months results from application of the Sentencing Guidelines.   More specifically, the offense has a base level of 8 points.  See USSG §2C18(a).  The amount involved in the offense, as stipulated by the Government and Mr. Victor, is $17,500, and results in a 4 point enhancement.  See USSG §§ 2C1.8(b)(1); 2B1.1(b)(1)(C).   And after applying the two point reduction for acceptance of responsibility, Mr. Victor ends up with an offense level of 10.  This offense level places Mr. Victor in Zone B, making him eligible for home detention.

While the relative simplicity of that outcome is enticing, there are a number of other factors that are expressly recognized in case law applying the guidelines that would militate in favor of probation, and we respectfully ask the Court to impose a sentence of probation for the reasons expressed below.

II. **The Factors Set Forth in the Guidelines Warrant a Downward Variance.**

The Guidelines recognize that variance from the Guidelines may be appropriate.  The decision whether or not to grant a variance depends upon a weighing of the factors set forth in the statutory scheme governing sentencing. *See* USSG Office of General Counsel, "Departure and Variance Primer," May, 2014, at 102 ("USSG Primer") ("A 'variance' . . . , occurs when a judge imposes a sentence above or below the otherwise properly calculated final sentencing range based on application of the other statutory  factors in 18 U.S.C. § 3553(a)."  *Id.* at 1-2 (citing *United States v. Rangel*, 697 F.3d 795, 801 (9th Cir. 2012) (citing *United States v. Cruz-Perez*, 567 F.3d 1142, 1146 (9th Cir. 2009).   More specifically, a variance is appropriate here

"based on application of the other statutory factors in 18 U.S.C. § 3553(a)."  USSG Primer, at 102.  We deal with those factors below.[1]

A.  <u>**The Individual Characteristics of the Defendant**</u>

The first factor to be considered in determining whether a variance is appropriate is the particular defendant and his or her particular situation.[2]  Mr. Victor has always exhibited great respect both for the law and the government, both in his business and personal life.   It is ironic that the offense for which he has pled guilty occurred precisely because he wanted to assist those he felt deserving of support, rather than to create a *quid pro quo* in which he asked for assistance in gaining an appointed position for himself or his family.   For instance, Mr. Victor stood to gain absolutely nothing from the election of Mr. Cain to the presidency.   Without diminishing his crime, it is clear that Mr. Victor did not act out of greed, which is the hallmark of most fraud cases.

One need only look at other cases in which a downward variance has been imposed to see that Mr. Victor is deserving of probation.  By way of comparison, Mr. Victor is far more deserving of a downward variance than was the defendant in *United States v. Autery*, 555 F.3d 864 (9th Cir. 2009), who received a downward variance from a guideline range of 41-51 months. Notwithstanding that the defendant in *Autry* pled guilty to a far more serious crime, child pornography, the court granted a downward variance, imposing a sentence of five years' probation.  The court did so based in part on finding that the defendant did not fit the profile of a

---

[1] We recognize that a variance is distinct from a downward departure, and consistent with the Plea Agreement, we are not requesting a downward departure, although the Court of course has discretion to do so if it determines that such a disposition is appropriate.

[2] Letters directed to Mr. Victor's individual characteristics are attached as Exhibit A in the Appendix.

pedophile, had no history of substance abuse, no interpersonal instability, was motivated and intelligent, and had the continuing support of his family.  *Id*. at 868.

Here as with Mr. Autery, Mr. Victor does not fit the profile of someone who is engaged in fraud, and similarly has been a good husband, father, and member of the community. Moreover, Mr. Viktor's personal history is even more deserving of leniency than was the defendant in *Autery*, as Mr. Victor is not accused of such a serious crime as child pornography, and as explained below, probation has been ordered repeatedly in cases involving campaign contribution violations.  *See infra*.

 In addition to a total absence of conduct warranting an enhancement, there is also significant conduct warranting downward variance from the 6-12 month range in the Guidelines to the level of probation.  Notably, government service has repeatedly been cited as a reason for a downward variance.  See USSG Primer, (citing *United States v. Robinson*, 516 F.3d 716 (8th Cir. 2008) (defendant's public and military service taken into account for variance); *United States v. Howe*, 543 F.3d 128 (3d Cir. 2008) (affirming downward variance based on defendant's twenty years of military service, honorable discharge, and remorse)).

It should be pointed out that Mr. Victor is self-employed, with minimal staff.  The stigma alone of a felony will create difficulties for Mr. Victor in his business – but his physical unavailability due to incarceration would create insurmountable hurdles and potential catastrophe.  Mr. Victor and those employees and contractors who depend on his business would not be the only ones to suffer from his incarceration.  Mr. Victor's wife is over 70 years old, and recovering from a serious shoulder surgery.

B.      **The Relative Seriousness of the Offense.**

The Guidelines require judicial consideration of the seriousness of the offense -- beyond mere consideration of the fact that Congress has deemed it a crime and the Sentencing Commission has assigned it a certain number of points.  Decisions have addressed the *relative* seriousness of the offense, and, in addition, whether the defendant engaged in other conduct that exacerbated the criminal scheme.  See, e.g., *United States v. Whitehead*, 532 F.3d 991 (9th Cir. 2008) (affirming a downward variance to probation in a case involving the sale of counterfeit access cards in violation of the Digital Millennium Copyright Act based in part on the district court's finding that the defendant's crime "[di]d not pose the same danger to the community as many other crimes").   No exacerbating conduct, such as obstruction, is alleged here.

Any discussion of the seriousness of the offense must take into account the Supreme Court's recent decisions cutting back on campaign finance restrictions.  The Supreme Court has held that the only legitimate basis, consistent with the Constitution, for regulating campaign contributions is the prohibition of contributions that carry with them an actual or apparent *quid pro quo.  McCutcheon v. Federal Election Comm'n,* 134 S. Ct. 1434, 1450 (2014); *Davis v. Federal Election Comm'n,* 554 U.S. 724, 741 (2008). This explains why, in the Court's view, it struck down campaign contribution limits, while sustaining limits on individual contributions to specific candidates (and candidate-affiliated PACs).  *Id.*  The sole justification for imposing this restriction on First Amendment is the countervailing need to avoid corruption or its appearance.  By contrast, contributions geared toward a contributor gaining greater political access and goodwill cannot be regulated consistent with First Amendment protection, and should not be prohibited. As put bluntly by the Supreme Court:

"[i]ngratiation and access . . . are not corruption." *Citizens United v. Federal Election Comm'n,* 558 U.S. 310, 360 (2010).

Here, it is highly significant that the Government has not sought an enhancement based on any alleged desire to obtain a *quid pro quo*.   Therefore, while violative of the campaign contribution laws, this is not the type of "core case" that the campaign contribution laws were designed to address.  Indeed, the absence of any *quid pro quo* sought by Mr. Victor starkly distinguishes this case from those in which prison sentences have been handed down.

Further, courts often look to the impact of an offense, including whether it has caused injury to innocent victims. It is noteworthy that the Government here has not chosen to seek an enhancement for a variety of types of conduct recognized in the Sentencing Guidelines as deserving of harsher punishment.  There is no claim by the Government that the campaign payments were done to obtain a personal advantage, see USSG 2C1.8(b)(3)(B) that the payments were so numerous as to warrant a harsher punishment, see USSG 2C1.8(b)(4), or that any of the other enhancements would apply.

Where the offense involves campaign finance violations, the Court may look also to the impact of Defendant's conduct on the election, and whether his conduct somehow influenced the outcome, such as by allowing a candidate to run for office where they otherwise would have lacked the means to do so.   There is no basis whatsoever for concluding that Mr. Victor's conduct did anything other than draw down on his own assets because the contributions had utterly no impact on the election.

One need only look to the amount spent on the two campaigns to see that there could not possibly have been any impact from the improper donations.   The Herman Cain campaign raised $16.2 million.   In addition to that sum, courts may consider that money was contributed to

PACs dedicated to the election of Mr. Cain.   It is impossible that the $15,000 at issue contributed in favor of Mr. Cain by Mr. Victor could have had any impact whatsoever on the election, or Mr. Cain's ability to run for office.   The same is true of the Senatorial campaign, which raised $4.6 million in contributions, and, as with Cain, also had substantial sums raised through  PAC's.   There is no possibility that the $2500 at issue contributed by Mr. Victor influenced that election.

### C.    The Fallacy of Treating All "Frauds" As Warranting Similar Treatment Under the Fraud Table.

The "seriousness of the offense" under the Sentencing Guidelines calls for  use of the fraud table.   See USSG §2B1.1.   But the fraud table is based on the simplistic notion that "one size fits all" by making the sentence – irrespective of the particular characteristics of the fraud -- turn on the *dollar* amount of the offense.   Because all fraud cannot be viewed as warranting similar treatment, it is particularly appropriate for the Court to use its the discretion to invoke variances based on *policy* determinations.

Much has been written by courts and commentators about the use of a fraud table, and its weaknesses. For one thing, courts have recognized that the fraud table relies on a single factor, rather than the multi-faceted approach underlying sentencing.  As the court held in *United States v. Gupta,* 904 F. Supp. 2d 349, 351 (S.D.N.Y. 2012) (citation omitted),  "[T]he . . . Commission chose to focus largely on a single factor as the basis for enhanced punishment: the amount of monetary loss . . . occasioned by the offense. By making a Guidelines sentence turn, for all practical purposes, on this single factor, the . . . commission effectively ignored the statutory requirement the federal sentencing take many factors into account, and by contrast effectively guaranteed that many such sentences would be irrational on their face."

Second, a number of courts have questioned the use of the loss table based on the fact that the Sentencing Commission did not rely upon empirical data each of the several times it has enhanced the table.  For instance, as noted in the concurrence in *United States v. Corsey,* "the loss guideline . . . was not developed by the Sentencing Commission using an empirical approach based on data about past sentencing practices." 723 F.3d 366, 379 (2d Cir. 2013). Judge Underhill also noted that the pressure to amend the loss table came from congressional pressure, *id.* at 380, and without the benefit of having empirical data that would support increasing sentencing ranges. *Id.*

Because of the lack of empirical data, courts have recognized that reliance on the fraud table is exactly the sort of situation where a variance may be appropriate.  See, e.g., *United States v. Diaz,* 2013 WL 322243, at *3 (E.D.N.Y. Jan. 28, 2013) ("[a] district court's authority to vary from the applicable Guidelines range due to a policy disagreement is at its greatest when," as here, "the offense Guideline at issue is not the product of the Commission's empirical analysis and technical expertise.").  *See also   United States v. Adelson,* 441 F. Supp. 2d 506, 515 (S.D.N.Y. 2006) ("[W]here, as here, the calculations under the guidelines have so run amok that they are patently absurd on their face, a Court is forced to place greater reliance on the more general considerations set forth in section 3553(a)."); *United States v. Ovid,* No. 09-cr-216(JG), 2010 WL 3940724 (E.D.N.Y. Oct. 1, 2010).

The response – by courts and commentators alike – has been to rely on substantial departures or variances to mitigate the occasional unfairness resulting from a loss table that treats all frauds of a particular dollar amount in a similar fashion. *See* Kate Stith & Jose A. Cabranes, *Fear of Judging: Sentencing Guidelines in the Federal Courts* (University of Chicago Press 1998); Frank Bowman, *Sacrificial Felon: Life Sentences For Marquee White-*

11

*Collar Criminals Don't Make Sense, American Lawyer,* Jan. 2007, at 63 (noting that the "rules governing high-end federal white-collar sentences are now completely untethered from both criminal law theory and simple common sense"); Hon. Jed S. Rakoff, *Why the Federal Sentencing Guidelines Should Be Scrapped,* 26 Fed. Sent'g Reptr. 1 (2013); *see also* American Bar Association, *A Report on Behalf of the American Bar Association Criminal Justice Section Task Force on the Reform of Federal Sentencing for Economic Crimes,Second Draft* (May 15, 2014), available at <u>http://www.americanbar.org/content/dam/aba/uncategorized/criminal</u> justice/economic crimes. authcheckdam. pdf (last visited October 27, 2014).

Not only are frauds very different from each other, but campaign contribution violations are uniquely distinct from the bulk of the crimes which fall within the ambit of the fraud table, Section 2B1.1.   Courts recognize that the two fundamental characteristics driving the fraud table are the loss to the victim, see, e.g., USSG 2B1.1, or alternatively, the gain to the defendant.  See, e.g., USSG 2B1.1, comment n.3(B); *United States v. Munoz,* 430 F.3d 1357, 1369-71 (9th Cir. 2005) (gain can be considered when loss is difficult to determine).   As can be seen from the offense involving Mr. Victor, there was no "loss" within the meaning of the Guidelines, and second, surely no gain to him.

**D.     <u>The Need to Avoid Disparate Treatment</u>**

Because the Guidelines are intended to avoid disparate treatment of individuals in connection with sentencing, it is appropriate for the Court to consider how other individuals have been treated for similar conduct.   Indeed, a district court is not "forbidden to consider the guidelines and the need to avoid unwarranted sentence disparities when exercising its discretion;" but to the contrary, "the governing statute directs the sentencing court to consider these matters as two factors among several in the sentencing process."   *United States v. Ruelas-Mendez*, 556 F.3d 655 (8th Cir. 2009).

12

Canvassing the matters presented to the Federal Election Committee over the last five

years demonstrates that the majority of cases have not resulted in criminal prosecution at all,

notwithstanding the fact that in most cases the amount involved in the offense was greater than

that at issue in this case.  The following chart reflects matters identified over the last five years

pending before the Federal Election Commission:[3]

| Name of individual | Amount of Contribution | Disposition | Criminal Charges |
|---|---|---|---|
| MUR 6215 (Kimsey Architects) | $1500 | $34,800 civil penalty | No |
| MUR 6440 (Friends of Frank Guinta) | $355,000 | $15,000 civil penalty and $355,000 refunded to parents. | No |
| MUR 6465 (Natalie Wisneski) | $30,400 | $15,000 civil penalty (waived because of financial hardship). | Probation |
| MUR 6465 (John Junker)[4] | $30,000  (contribution was made in order to illegally influence vote beneficial to defendant) | $25,000 civil penalty and $62,500 reimbursed to corporation | 8 month sentence followed by probation |
| MUR 6889 (Eric Byer) | $214,353 | $53,600 civil penalty; also required reimbursement of contributions. | No |
| MUR 6889 (NATA) | $214,353 | $26,000 civil penalty and $66,000 disgorgement to US Treasury | No |
| MUR 6922 (Michael Henke) | $23,419 | $23,419 civil penalty | No |
| MUR 6922 (ACA/ACPAC) | $23,419 | $4,400/$8,800 civil penalties | No |

---

[3]  Documents from the Federal Election Commission referenced above are included in the Appendix as Exhibit B.
[4] *Junker* is notable in that it represents facts that are substantially distinguishable from those at bar.   More specifically, and as shown by the above chart, there was a desire to obtain a specific *quid pro quo.*

Similarly, as shown by the following cases from this District, probation has been deemed appropriate despite the existence of aggravating facts not present here.[5]   A fitting contrast is *United States v. Stip*e, No. 03-cr-00128 (D.D.C. 2003).  The defendant there was a lawyer and former legislator who pled guilty to conspiracy to defraud the United States in a scheme to funnel approximately $250,000 in illegal conduit contributions into a Congressional campaign fund. The defendant obstructed justice by creating false documents and committed perjury. Stipe was sentenced to 5 years' probation, 6 months of home confinement, 1,000 hours of community service and fined $735,000.  And in *United States v. Spears*, No. 03-cr-00096 (D.D.C. 2003), the defendant had engaged in illegal campaign contributions involving over twenty straw donors and over $40,000 in contributions.  She was nevertheless sentenced to home detention, probation and community service.   See also *United States v. Lake*, No 1:99-mj-00674-JMF (D.D.C. 1998) (wire fraud relating to $5,000 illegal campaign contribution scheme and two counts of Federal Election Campaign Act;  $150,000 fine; 2 years' probation)' *United States v. Crop Growers Corporation*, No. 1:96-cr-00181-GK a (D.D.C. 1997) (conspiracy to defraud Federal Election Commission (AFEC) resulting from $46,000 in illegal campaign contributions and one count violation of Foreign Corrupt Practices Act resulting from falsification of corporate books and records to conceal the illegal campaign contributions;  $2,000,000 fine).

Courts in other districts have ruled that probation is appropriate notwithstanding far worse conduct involving hundreds of thousands of dollars in campaign contributions.  In *United States v. Troha*, No.  No. 07-CR-050  (E.D.Wisc.   ), the defendant pled guilty to making illegal campaign contributions of $250,000, and was sentenced to probation.   Similarly, *United States v. Chatwal*, 1:14-cr-00143-ILG (E.D.N.Y., 2014), involved $180,000 in contributions.  The

---

[5] Dockets involving cases discussed in this section are included in the Appendix as Exhibit C.

defendant received probation even though the Guidelines called for a sentence of 46-57 months based on the particular facts.  Similarly, in *United States v. D'Souza*, 14-cr-034 (S.D.N.Y. 2014), the defendant received community confinement despite conduct claimed by the prosecution to be "egregious" and warranting a ten-month sentence of incarceration.

Finally, incarceration has been limited to cases involving facts not present here.  One example is found in a case in this District, *United States v. Thompson*. 1:14-cr-00049-CKK (D.D.C., 2014).   The defendant there received a three-month sentence even though his scheme involved in excess of $3.3 million in payments, and the Government had alleged that the defendant had engaged in a pervasive campaign relating to 28 candidates.  And unlike the single count here, the defendant in *Thompson* pled guilty to 2 conspiracy counts.  Also, unlike here, the defendant in *Thompson* was motivated to make the contributions in order to further his companies' business interests.

Similarly, criminal cases reported during the last five years in other districts which have resulted in criminal prosecution reflect that incarceration is generally warranted where there are aggravating circumstances, such as obstruction of justice or massive amounts of contributions (totaling hundreds or even millions of thousands of dollars).  See,.e.g., *United States v. Bera*,  16-097 (E.D. Cal., 2016) ($260,000 in campaign contributions resulted in sentence of one year and one day; direct evidence of desire to influence the election);  *United States v. Harber*, 1:14-cr-00373-LO (E.D.VA.  2015) ($325,000 in campaign contributions and direct evidence of obstruction by lying to FBI agents, resulted in 2 year sentence); *United States v. Marybeth Feiss*, (S.D. Fla., 2012) ($800,000 fraud in connection with campaign contributions; 6 month sentence); *United States* v. *Whittemore*, 3:12-CR-0058-LRH-WGC (D.Nev., 2013) (24 month disposition in light of the fact that defendant was a former lobbyist and there were aggravating circumstances

that resulted in a request by the government for a 51 month sentence); *United States v. Braddock*, 3:12-mj-00171-DFM (D. Conn.  2013) (sentence of 38 months based on evidence of actual intent to influence voters).

### E.   <u>Need to Consider Collateral Consequences</u>

The Court may also impose a downward variance based on collateral consequences that the defendant will face as a result of a conviction.   Here, the Court may consider the fact that Mr. Victor also faced proceedings brought by the Federal Election Commission (FEC), and has paid a fine of $65,000.  That is precisely the type of fact that has been found to warrant a downward variance.  See, e.g. *United States v. Anderson*, 533 F.3d 623 (8th Cir. 2008) (affirming a downward variance based on "other ways in which the defendant had suffered atypical punishment such as the loss of his reputation and his company, the ongoing case against him from the Federal Election Commission and the harm visited upon him as a result of the fact that his actions brought his wife and friend into the criminal justice system").

As shown by *Anderson*, not only is it appropriate for this Court to consider the FEC fine of $65,000, but it may also consider the impact on the reputations of Mr. Victor and his businesses.  533 F.3d at 633.   There is no doubt that a felony plea is a deep stain on Mr. Victor's reputation, and serious punishment for an offence over 6 years old and not repeated since. Notably, this infraction is the only time Mr. Victor has been charged with a crime.

Consequently, we most respectfully submit that this Court should exercise its discretion to find that a variance under the Guidelines is appropriate.

**III.**          **Both Parties, as Well as The Presentence Report, Correctly Conclude that Conduct Pre-dating the Offense Should Not be Considered  "Relevant Conduct," And Should Be Excluded from Consideration in Determining the Appropriate Guideline  Range.**

The prosecution, the defense and the pre-sentence report all agree that certain conduct by the Defendant does not involve "Relevant Conduct" within the meaning of the Guidelines and therefore should not be considered in determining the appropriate guideline range.   See Plea Agreement, at page 4, para. 10, at page 7, n.1 ("The parties stipulate and agree that  $17,500, the amount contributed to Committee A and Committee B in 2011, is the appropriate amount for use in calculating defendant's Offense Level under the Guidelines. . . ").   That determination is correct, and most respectfully, should be accepted by the Court.

The Guidelines expressly recognize that "relevant conduct" depends upon an intensely factual determination as to whether such "other" conduct "*occurred during the commission of the offense of conviction. . .* " USSG § 1B1.3(a)(1) (emphasis added).   The most often cited examples include situations where actions were part of the execution of the crime, or which made the crime possible, or which helped to cover up or conceal the criminal conduct.   Here, the Information makes absolutely clear that the offense to which Mr. Victor pled guilty was solely the making of campaign contributions totaling $17,500 in 2011.   Any prior contribution did not 'occur during the commission of the offense' of over-contributing in 2011 and thus does not constitute "relevant conduct" under the statute.

Nor does the uncharged conduct mentioned in the Plea Agreement equate to "Relevant Conduct" as "part of the same course of conduct or common scheme or plan."   See USSG § 1B1.3(a)(2).  The Guidelines state, first, that such conduct must be part of the "same" – and not merely a similar – offense, and second, the foregoing provision applies "solely with respect to offenses of a character for which [USSG] §3D1.2(d) would require grouping of multiple counts. .

. . "   1B1.3(a(2).   Here, under the language of the Guidelines, the absence of  multiple counts precludes finding that  the uncharged conduct is  part of the same offense. [6]

Moreover, all authorities agree that such conduct must still be part of the "same course of conduct or common scheme or plan."  See, e.g., *United States v. Hart*, No. 94-1005, 1995 U.S. App. LEXIS 20203 (10th Cir., July 28, 1995) (construing USSG, § 3D1.2(d)).  Courts presume that conduct occurring over a year prior to the conduct charged against a defendant are too remote in time to be considered "relevant conduct."  See, e.g., *United States v. Dugger*, 485 F.3d 236 (4th Cir., 2007).

This presumption supports exclusion of campaign contributions mentioned in the Plea Agreement at para. 10c, which occurred in September of 2010 and thus more than a year earlier than the offenses here, which occurred in November and December, 2011.   See Factual Proffer. This is the quintessential "isolated" or "sporadic" conduct, occurring during a two day period long before the instant offense.  Because those contributions, which related to a dinner hosted by Mr. Victor, in no way reflected "repeated, regular acts or offenses occurring at fixed or certain intervals…, *United States v. Sykes*, 7 F.3d 1331, 1337 (7th Cir. 1993), they cannot be considered "relevant conduct."[7]

Finally, a finding that uncharged contributions mentioned in the Plea Agreement constitute "relevant conduct" would require the type of "mini-trials" which should be avoided whenever possible under the Guidelines and applicable case law. See, e.g., *United States v.*

---

[6] The Seventh Circuit reached a contrary result in *United States v. Johnson*, 347 F.3d 635, 639 (7th Cir. 2003).   We have been unable to find any other Circuits following that decision.

[7] Moreover, the parties both agree that the way in which the "offense" was framed involves an appropriate exercise of prosecutorial discretion.   Courts have long held the prosecution has discretion in how it frames a charge,  as long as those charges state an offense and do not violate the Constitution.  *See, e.g.*, *United States v. Lovasco*, 431 U.S. 783, 784-86 (1977); *United States v. Thompson*,  251 U.S. 407-411 (1920).  How an offense is framed by the prosecution is entitled to greater weight where, as here, the Defendant agrees to plead guilty to that "offense," as charged in the Information, and the Court determines – as it has done here -- that the charge is legally sufficient to support the plea.

*Forrest*, 611 F.3d 908, 913 (8th Cir. 2010); *United States v. Martin*,  526 F.3d 926 (6th Cir. 2008); *United States v. Rosa*, 507 F.3d 142, 151 (2d Cir. 2007); *United States v. Dowd*,  451 F.3d 1244, 1253 (11th Cir. 2006).   Given the temporal and circumstantial dissimilarities between the instant offenses and uncharged contributions, linking them in a 'common scheme" would require factual determinations for each uncharged contribution.  That is particularly true in light of differences between and among the various contributions, including amounts, who made the contributions, what was said in connection with each contribution, the way in which each contribution was made, and the motivations for making the contribution.[8]   For the foregoing reasons, such factually nettlesome mini-trials should be avoided.

We respectfully submit that such factually nettlesome mini-trials should be avoided in favor of the Court's due consideration of the charges that the prosecution, in its discretion, chose to bring against Mr. Victor and the foregoing factors that apply to those offenses.

CONCLUSION

We respectfully submit that Mr. Victor should be sentenced to a term of probation, or in the alternative, to home confinement at the lower end of the 6-12 month guideline range.

Respectfully submitted

Nelson Mullins Riley & Scarborough LLP
1001 Constitution Ave., N.W.
Washington, D.C. 20001a
(202) 689-2915

By:
Samuel Rosenthal (DC Bar. No. 329516)
Sam.rosenthal@nelsonmullins.com
202-689-2915
Counsel for Adam Victor

---

[8] As confirmed by the Plea Agreement, several of the contributions did not even involve reimbursement of the contributors – which is critical to how the offense charged in the Information occurred. *See* Plea Agreement, para. 10b (stating that contributions were made from an account which Mr. Victor "controlled").

## CERTIFICATE OF SERVICE

I hereby certify that on February 20th, 2018, a true and correct copy of this Sentencing Memorandum was filed with the Clerk of the Court using the ECF system which will send notification of such filing to attorneys Todd Gee and Andrew Laing.

Respectfully submitted,

_____*/s/ Samuel Rosenthal*_____
Samuel Rosenthal (DC No. 329516)
Nelson Mullins Riley & Scarborough, LLP
101 Constitution Ave NW, Suite 900
Washington, DC 20001
Tel: (202) 689-2915
Fax: (202) 689-2860
Email: sam.rosenthal@nelsonmullins.com

*Counsel for Adam H. Victor*

20